**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALLERGAN, INC. and ABBVIE INC., | ) ) ) |
| *Plaintiffs*, | ) ) C.A. No. 2:23-cv-06208-NJC-ST |
| v. | ) **JOINT DISCOVERY PLAN** |
| | ) **WORKSHEET AND REPORT** |
| AMNEAL PHARMACEUTICALS OF NEW | ) **PURSUANT TO FEDERAL RULE OF** |
| YORK, LLC and AMNEAL EU, LIMITED, | ) **CIVIL PROCEDURE 26(f)** |
| | ) |
| *Defendants*. | ) ███████████ |
| | ) |

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Plaintiffs Allergan, Inc. and AbbVie Inc. (collectively, "Plaintiffs") and Defendants Amneal Pharmaceuticals of New York, LLC and Amneal EU, Limited (collectively, "Defendants" and, together with Plaintiffs, "the Parties"), via their respective counsel, have met and conferred, and submit this joint statement outlining the proposed discovery plan and schedule. Section I confirms the Parties' compliance with Federal Rule of Civil Procedure 26(f). Sections II and III provide the Parties' positions supporting their respective proposed case schedules. Section IV sets forth the Parties' proposed schedules. Sections V and VI address the scope of Phase I discovery and the treatment of electronically stored information, respectively.

## I.     RULE 26(f) CONFERENCE

On March 27, 2024, counsel for the Parties conducted a Rule 26(f) conference by telephone and completed the Rule 26(f) process on April 3, 2024 by exchanging draft submissions. The Parties discussed the topics required by Rule 26(f)(2).

## II.      PLAINTIFFS' POSITION

The parties have submitted competing proposed schedules.  Plaintiffs respectfully request that the Court enter Plaintiffs' proposed schedule or, if the Court is not inclined to enter Plaintiffs' proposed schedule, Plaintiffs request a scheduling conference to discuss these issues prior to entering a schedule.  As discussed in detail below, Plaintiffs' proposal should be adopted for at least four reasons.  *First*, Plaintiffs' schedule recognizes that this is a complex case with twelve patents that requires fact and expert discovery on a number of highly technical issues relating to infringement  and  validity.  *Second*, ███████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████  *Third*, Defendants have not thus far taken all available steps to expedite this case; for example, Defendants waited nearly three months after the complaint was filed to file their answer.  *Fourth*, while Defendants argue that only one patent will be tried, Defendants do want to keep all twelve patents in the case, so the schedule must permit sufficient time for the parties to litigate all twelve patents.

This patent case arises under the Hatch-Waxman Act, the federal law governing approval of new and generic drugs.  Passed in 1984, the Hatch-Waxman Act reflects a careful legislative balance between the need to foster innovation to continue to discover and develop new drugs, on the one hand, and the need to provide a predictable regulatory pathway for generic drugs to obtain FDA approval, on the other hand.  Here, Plaintiffs hold an approved new drug application ("NDA") for LUMIGAN® 0.01% (bimatoprost), which safely and effectively reduces intraocular pressure in patients with open angle glaucoma and ocular hypertension.  Defendants have filed an abbreviated new drug application ("ANDA") with the FDA seeking to obtain regulatory approval to market a generic version of LUMIGAN® 0.01%.  Defendants' ANDA included "Paragraph IV" certifications asserting that Plaintiffs' twelve Orange Book-listed patents are invalid and/or would

not be infringed by Defendants' ANDA Product.[1]  When, as here, certain required procedural steps are met in the filing of a patent infringement action, the Hatch-Waxman Act provides for a stay of the FDA's approval of Defendants' ANDA for up to 30 months.  *See* 21 U.S.C. § 355(j)(5)(B); 21 C.F.R. § 314.107(b)(3).  Thus, final approval of Defendants' ANDA is subject to a stay until January 6, 2026, unless terminated earlier due to Defendants prevailing in this case.

Plaintiffs' proposed schedule aims to have this case fully litigated at the district court level within 30 months, as contemplated by the Hatch-Waxman Act.  Plaintiffs' schedule is also tailored to the complexity of this case.  In addition to Plaintiffs' infringement allegations, Defendants have raised numerous invalidity defenses.[2]  Moreover, foreign discovery is likely necessary because Amneal EU, Limited is an Irish corporation, and much of the work relating to Defendants' ANDA Product occurred in India.

A comparison to the schedule from a concurrent ANDA litigation involving LUMIGAN® 0.01% against a different generic company demonstrates the reasonableness of Plaintiffs' proposed schedule.  *Allergan, Inc. v. Mankind Pharma Ltd.*, C.A. No. 23-cv-272, D.I. 31 (D. Del.).  In *Mankind*, only one patent, the '504 Patent, is at issue, as opposed to the twelve at issue here.  Moreover, the *Mankind* defendant stipulated not to challenge validity.[3]  By contrast, Defendants in this case assert several invalidity defenses.  Although this case is demonstrably more complex

---

[1] The Orange Book is an FDA publication where NDA holders list patents covering an approved product that could reasonably be asserted against a generic ANDA filer.

[2] Plaintiffs disagree with Defendants' assertions that the claims of the asserted patents are not patentably distinct and that the patent term adjustment for U.S. Patent No. 7,851,504 ("the '504 Patent") was improperly granted.

[3] The validity stipulation was entered after the schedule had been set, but the schedule has not been revised since then.

(continued…)

than the *Mankind* case, the schedule Defendants propose allows much less time for fact discovery, expert discovery, and trial as shown in the chart below.

| Event[4] | Plaintiffs' Proposal | *Mankind* Schedule | Defendants' Proposal |
|---|---|---|---|
| Close of Fact Discovery | 19 | 16 | 13 |
| Close of Expert Discovery | 23 | 20 | 17 |
| Trial | 26 | 22 | 19 |

There are no exceptional case-specific circumstances that justify Defendants' proposed schedule. Indeed, Defendants primarily attempt to justify their schedule by invoking the legislative purpose of the Hatch-Waxman Act, which applies equally to all Hatch-Waxman cases. Nor have Defendants acted to accelerate this case, as Plaintiffs filed their complaint on August 17, 2023, but Defendants did not answer until November 6, 2023.[5]

The regulatory approval status of Defendants' ANDA further counsels against adopting Defendants' schedule. ███████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████ █████████████

████████████████████████████████ █████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████

---

[4] All time periods in this table are stated in number of months after filing of the complaint.

[5] Defendants also controlled the timing of this lawsuit based on when they filed their ANDA. LUMIGAN® 0.01% was approved in 2010, and the asserted patents were all issued by January 2016. Yet Defendants did not file their ANDA until May 2023. If Defendants believed they had a safe and effective non-infringing product, they could have filed their ANDA sooner as opposed to waiting and attempting to force Plaintiffs to litigate this complex case on Defendants' proposed condensed and arbitrary timeline.

(continued…)



████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████    ██████  Ex. A, AMNEAL_33976 at 90. █████████████████

████████████████████████████████████████████████████

███████████████████████████  █  ███████████████████████████.[6]

Indeed, it appears that Defendants have already started another bioequivalence clinical study, to

be completed in May 2025.[7] ████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████  ██████████████████████████

██████████████████████████. Thus, █████████████████████

██████████████, it would serve no purpose to adopt the unduly accelerated schedule

Defendants request.[8]

Especially in view of the above, Defendants' attempt to rely on the presumptive time

periods in Your Honor's Discovery Plan Worksheet as support for their proposed schedule should

be rejected.  The Worksheet, which sets forth "presumptive[]" deadlines, does not purport to

provide an appropriate schedule for every civil case.  The Worksheet also does not include time

---

[6] Specifically, █████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████." *Id.* at 89–90 (emphasis added).

[7] *See* Clinical Trial No. NCT06267274, NATIONAL LIBRARY OF MEDICINE: NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION (last update posted March 29, 2024), *available at* https://classic.clinicaltrials.gov/ct2/show/NCT06267274 (last visited April 1, 2024).

[8] Defendants assert below that the status of their ANDA is "irrelevant to the case schedule," citing *Par Pharm., Inc. v. Luitpold Pharm., Inc.*, No. 16-cv-02290 (WHW)(CLW), 2017 WL 452003, at *6–7 (D.N.J. Feb. 1, 2017), for the proposition that "a Hatch-Waxman Plaintiff's speculation about what the FDA may do in the future was irrelevant to the infringement inquiry." The question at issue here is not infringement, but whether there is any basis to adopt an accelerated schedule when, regardless of the outcome of this case, ███████████████████████████ ███████████████████████.

for events specific to complex patent cases, including claim construction proceedings (*see* Local Patent Rules 11–12), infringement contentions (claim charts providing evidence and argument regarding how the accused product meets each and every element of the asserted claims), and invalidity contentions (charts providing evidence and argument regarding why each and every element of the asserted claims is allegedly disclosed in the prior art). For example, a court's claim construction ruling in a patent case helps to define the infringement and validity issues to be litigated. In recognition of this fact, both Parties' proposals build in several months for claim construction briefing and a hearing *before* fact discovery closes, which is not compatible with a schedule based on the presumptive time periods in the Worksheet.

Defendants also attempt to justify their proposed schedule by arguing that, because eleven of the asserted patents expire in March 2025, trial in this case will involve only the '504 Patent. But unless and until Defendants drop their challenge to every patent other than the '504 Patent (*i.e.*, withdraw their Paragraph IV certifications on file with the FDA), the schedule must allow for the parties to conduct discovery on all asserted patents. The Parties' agreement on a stipulation— to be filed concurrently with this submission—that Defendants will not contest the validity or enforceability of the asserted patents other than the '504 Patent does not change the analysis because Plaintiffs still must conduct discovery on *infringement* of all twelve patents (*i.e.*, prepare infringement contentions, draft expert reports, etc.). In fact, Defendants recently rejected Plaintiffs' request that Defendants commit to withdrawing their Paragraph IV certifications on the asserted patents other than the '504 Patent if the Court denies Defendants' pending motion for judgment on the pleadings of non-infringement. Given Defendants' position, there is presently no basis to treat this case as involving only one patent.

Even if this were a single-patent case, Defendants' proposed schedule remains unrealistic. As noted above, the *Mankind* case involves only infringement of the '504 Patent. By contrast, Defendants have challenged the validity of the '504 Patent on numerous grounds. Defendants have not explained (nor can they) why this case should go significantly faster than a case involving the same patent but many fewer issues. Defendants also ignore the fact that at least two of their invalidity defenses (obviousness-type double patenting and the challenge to the '504 Patent's patent term adjustment) are specific to the '504 Patent, and thus will remain in the case after the stipulation is entered (and would remain in the case even if Defendants withdraw their challenge to the other eleven patents).

## III.   **DEFENDANTS' POSITION**

This case has been pending for almost eight months and the parties have been discussing a case schedule for over two months. Amneal's proposed schedule seeks timely resolution of this important matter and takes into account the Court's suggested timing for discovery and the realities of this case. On the other hand, Plaintiffs' proposed schedule seeks to delay resolution, and in turn, approval of Amneal's ANDA Product. At its core, this case involves the non-infringement of the Asserted Patents based on the same limitation present in every claim (i.e., "about 200 ppm [BAK]") and the invalidity of U.S. Patent No. 5,851,504 ("'504 Patent"). To streamline the case, Amneal has stipulated to not pursue its invalidity Counterclaims for all Asserted Patents except for the '504 Patent. The remaining issues (*i.e.,* noninfringement of the Asserted Patents and invalidity of only the '504 Patent) do not warrant the extended case schedule Plaintiffs propose. Plaintiffs have litigated many of the Asserted Patents through trial once before and are currently asserting the '504 Patent in a case involving another generic manufacturer that has been pending for over a year. At a minimum, Plaintiffs have already produced in other cases most, if not all, the

core technical discovery involving the subject matter of the Asserted Patents.[9] For non-infringement, the claims of the twelve Asserted Patents share many identical limitations and Plaintiffs have admitted that they are not patentably distinct in submissions to the United States Patent and Trademark Office during prosecution of the Asserted Patents. Given the significant overlap, asserting infringement of twelve patents is not as immense as Plaintiffs make it seem. And ultimately, if this case proceeds to trial, it will be reduced to a one-patent, three-claim case concerning only the '504 Patent because all the Asserted Patents, except for the '504 Patent, expire on March 16, 2025, before either party's proposed trial date.[10]

Amneal's proposed schedule is consistent with Your Honor's standard discovery plan, which contemplates 3.5 months of fact discovery and 9 months for the completion of all discovery. Given the narrow issues in this case, there is no reason to depart from this standard, especially when both parties are represented by sophisticated counsel that can devote significant resources to this case. Indeed, a dozen attorneys have appeared in this case so far, eight of whom represent Plaintiffs.

Defendants' proposed schedule also furthers the purpose of the Hatch-Waxman Act, which was to streamline access to lower cost generic drugs. *See* H.R. Rep. No. 98-957, Pt. 1, at 14 (June 21, 1984) ("the purpose of the Act was "to make available more low-cost generic drug by establishing a generic drug approval process . . . ). Before the Hatch-Waxman Act, the federal food and drug law contained no separate provisions addressing generic versions of drugs that had

---

[9] Amneal has already produced "Phase 1" discovery and has repeatedly offered to ship samples of its ANDA Product to Plaintiffs. Moreover, Amneal does not see any issues producing foreign discovery related to its ANDA Products and even offered to stipulate the named foreign entity out of the case as a result.

[10] The '504 Patent—despite being related to the other Asserted Patents—expires on June 13, 2027 due to the improperly granted a patent term adjustment.

previously been approved. The result was that a would-be generic drug manufacturer had to file its own NDA to market its drug, which required it to prove independently that the drugs were safe and effective, even though their products were using, *inter alia*, the same active ingredient as previously approved drugs. The Hatch-Waxman Act created a new type of application for market approval of a pharmaceutical—an Abbreviated New Drug Application or ANDA. See 21 U.S.C. § 355(j). An ANDA may be approved if the generic drug is determined by FDA to be bioequivalent to the approved brand-name drug. *Id.* An ANDA allows a generic drug manufacturer to rely upon the safety and efficacy data already developed by the original manufacturer. *Id.* Amneal's proposed schedule aligns with the objectives of Hatch-Waxman and reflects the amount of time needed to prepare for the narrow issues that will actually be litigated—one patent with no more than three claims—if this case proceeds to trial.

Plaintiffs also claim that there is no need proceed according to the discovery schedule provided in Your Honor's form Discovery Plan Worksheet based on pure speculation. During the Rule 26(f) conference, Plaintiffs stated that their longer schedule is appropriate because (1) Amneal may experience ███████████████████████; and (2) Amneal is conducting further clinical trials on its ANDA Product. There is no basis for either assertion. As an initial matter, Plaintiffs' speculation about the status of Amneal's ANDA with an administrative agency is irrelevant to the case schedule. *Par Pharm., Inc. v. Luitpold Pharm., Inc.*, No. 16-cv-02290 (WHW)(CLW), 2017 WL 452003, at *6-7 (D.N.J. Feb. 1, 2017) (finding that a Hatch-Waxman Plaintiff's speculation about what the FDA may do in the future was irrelevant to the infringement inquiry). It is also incorrect. ██████████████████████████████████ █████████████████████████████████████████████████████████. ██████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████ Lastly, contrary to Plaintiffs'

statements, there are no active ongoing clinical trials. The bioequivalency study listed on

www.clinicaltrials.gov has been completed and is referenced in Amneal's ANDA.[11] The other

listed study is not expected to be needed unless later requested by FDA. Accordingly, Plaintiffs'

speculation around Amneal's ANDA file cannot justify their proposed longer case schedule.

Amneal respectfully requests that the Court enter its proposed case schedule.

## IV.    PROPOSED SCHEDULE

| PROPOSED SCHEDULE | | |
| :---: | :---: | :---: |
| **Phase I (Pre-Settlement Discovery)** | | |
| **Deadline** | **Plaintiffs' Proposed Date** | **Defendants' Proposed Date** |
| **Submission of protective order:** | April 12, 2024 | April 10, 2024 |

---

[11] www.clinicaltrials.gov incorrectly indicates that Amneal is "actively recruiting" for a bimatoprost bioequivalence study. *See* https://clinicaltrials.gov/search?term=bimatoprost&spons=amneal. This study has been completed and is referenced in Amneal's ANDA.

(continued…)

| | | |
|---|---|---|
| **Completion date for Phase I Discovery as agreed upon by the parties:** *(Reciprocal and agreed upon document production and other discovery necessary for a reasoned consideration of settlement. Presumptively 60 days after Initial Conference)* | May 3, 2024[12] | March 15, 2024[13] |
| **Disclosure of asserted claims and initial infringement contentions:** *(L. Pat. R. 6)* | June 7, 2024 | April 17, 2024 |
| **Disclosure of initial invalidity contentions:** *(L. Pat. R. 7)* | July 12, 2024 | May 9, 2024 |
| **Date for initial settlement conference:** *(Parties should propose a date approximately 10-15 days after the completion of Phase I Discovery, subject to the Court's availability)* | July 18, 2024 | May 14, 2024 |
| **Phase II (Discovery and Motion Practice)** | | |
| **Exchange of proposed claim terms that require construction:** | July 26, 2024 | |
| **Exchange of proposed preliminary constructions of disputed terms and identification of related paragraph(s) from infringement/invalidity contention(s) disclosures:** | August 9, 2024 | May 16, 2024 |
| **Meet and confer to narrow disputes regarding terms and constructions:** | August 23, 2024 | May 21, 2024 |
| **Motion to join new parties or amend the pleadings:** *(Presumptively 15 days post initial settlement conference)* | August 30, 2024 | June 10, 2024 |
| **Submit joint claim chart:** *(L. Pat. R. 11)* | September 6, 2024 | May 23, 2024 |

---

[12] Defendants state below that they "produced all Phase I document discovery on March 15, 2024." While Defendants made a document production on March 15, 2024, Plaintiffs are not currently in a position to confirm that it contains all documents Defendants have proposed to produce as Phase I discovery.

[13] Consistent with its proposed schedule, Amneal produced all Phase I document discovery on March 15, 2024. It is currently waiting for Plaintiffs to provide an address to send the requested samples to, which Amneal requested on March 5, 2024.

| | | |
|---|---|---|
| **Plaintiffs' opening claim construction brief:** *(L. Pat. R. 12(a))* | October 11, 2024 | June 21, 2024 |
| **Defendants' responsive claim construction brief:** *(L. Pat. R. 12(b))* | November 8, 2024 | July 19, 2024 |
| **Plaintiffs' reply claim construction brief:** *(L. Pat. R. 12(c))* | December 6, 2024 | July 29, 2024 |
| **Substantial Completion of Document Production** | October 25, 2024 | May 30, 2024 |
| **Claim construction hearing:** | December 2024 / January 2025 | August 2024 |
| **Final infringement contentions:** | January 24, 2025 | September 15, 2024 |
| **Final invalidity contentions:** | February 21, 2025 | September 15, 2024 |
| **Production of opinions of counsel relied on in defense of willful infringement, induced infringement, or that a case is exceptional:** *(L. Pat. R. 10)* | N/A | N/A |
| **All fact discovery completed by:** *(Presumptively 3.5 months post first requests for documents/interrogatories)* | March 7, 2025 | September 29, 2024 |
| **Exchange of opening expert reports on issues for which the parties bear the burden of proof:** | April 4, 2025 | October 18, 2024 |
| **Responsive expert reports:** | May 9, 2025 | November 17, 2024 |
| **Reply expert reports:** | June 6, 2025 | December ~~1~~8, 2024 |
| **Expert depositions completed by:** *(Presumptively 30 days post expert reports)* | July 11, 2025 | January 8, 2025 |
| **COMPLETION OF ALL DISCOVERY BY:** *(Presumptively 9 months after Initial Conference)* | July 11, 2025 | January 8, 2025 |
| **Final date to take the first step in dispositive motion practice** | August 8, 2025 | January 22, 2025 |

| Trial Date<br>**Plaintiffs' proposal: 5-day trial**[14]<br>**Defendants' proposal: 3-day trial** | October 2025[15] | March 2025 |
|---|---|---|
| **30-month stay expires** | January 6, 2026 | January 6, 2026 |
| **Do the parties wish to be referred to the EDNY's mediation program pursuant to Local Rule 83.8?** | No | No |

## V.     PHASE I DISCOVERY

The Parties have discussed the information that they believe should be exchanged during Phase I:

**Plaintiffs**: New Drug Application No. 22184; and the Asserted Patents and their Prosecution Histories.

**Defendants**: All portions of Abbreviated New Drug Application No. 217289 ("Defendants' ANDA"), all correspondence between the Defendants and the FDA regarding Defendants' ANDA or the products to be manufactured according to Defendants' ANDA ("Defendants' ANDA Product"), and samples of Defendants' ANDA Product.

Number of depositions: The parties agree that each side is limited to a total of 10 fact witness depositions, with no single deposition lasting more than 7 hours on the record, except deposition(s) of witnesses requiring translation, which will last no more than 10.5 hours on the record.

## VI.     ELECTRONICALLY STORED DATA

The Parties anticipate the need for discovery of electronically stored information (ESI) during discovery. The Parties will discuss whether an ESI discovery order is necessary.

---

[14] Plaintiffs submit that 5 days is appropriate given the number and complexity of the claims and defenses at issue in the case. For example, the *Mankind* schedule includes 3 full days for trial, and that case involves only infringement of a single patent.

[15] Plaintiffs understand that this Court's practice is not to set a trial date until a later stage in the case and has proposed a trial date here only because Defendants' proposal includes one.

Respectfully submitted,

FARRELL FRITZ, P.C.
    *s/ Kevin P. Mulry*
By: _____

Dated: April 3, 2024    Kevin P. Mulry
400 RXR Plaza
Uniondale, New York 11556
Tel. (516) 227-0620
kmulry@farrellfritz.com

Alan Vinegrad
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1022

Christopher Sipes
Michael N. Kennedy
Erica N. Andersen
Brianne Bharkhda
Douglas A. Behrens
Jia Hui Jiang
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956
(202) 662-6000

*Attorneys for Plaintiffs*

GREENBERG TRAURIG, LLP

    *s/ Jonathan R. Wise*
By:_____

Dated: April 3, 2024    Scott J. Bornstein
Giancarlo Scaccia
GREENBERG TRAURIG, LLP
One Vanderbilt Ave.
New York, NY 10017
(212) 801-9200
(212) 801-6400 (fax)

14

Jonathan R. Wise
GREENBERG TRAURIG, LLP
1717 Arch Street, Suite 400
Philadelphia, PA 19103
(215) 988-7850
(212) 988-7801 (fax)

*Attorneys for Defendants*