# Exhibit 1

# Amneal's Claim Construction and MJOP Presentation

*Allergan, Inc., et al.,*

*v.*

*Amneal Pharmaceuticals of New York, LLC, et al.*

(C.A. No. 2:23-cv-06208-NJC-ST)

January 16, 2025

# Overview of the Two Case-Dispositive Issues

1. **Claim Construction, Disclaimer, and Non-infringement**

2. **Invalid Patent Term Adjustment**
   (*Sawstop Holding LLC v. Vidal*, 48 F.4th 1355 (Fed. Cir. 2022))

# Proposed Claim Constructions

## Disputed Term: "about 200 ppm"

| Amneal's Proposed Construction | Plaintiffs' Proposed Construction |
|---|---|
| *"approximately 200 ppm and not including the amounts of BAK disclaimed during prosecution of the '504 patent, including from 'about 150 ppm' up to 'about 200 ppm'"* | *"approximately 200 ppm"* |

# Clarification of Amneal's Proposed Construction

## Disputed Term: "about 200 ppm"

| Amneal's Clarified Construction |
|---|
| *"approximately 200 ppm* ***but not including "about 150 ppm to" of BAK*** *that was disclaimed during prosecution of the '504 patent."* |

***… no plausible basis for infringement …***

# Disclaimer of Claim Scope During Prosecution

Disclaimer can occur through **amendment, argument, cancellation of broader claims, acquiescence** to the USPTO's decision, or any **other representations** "made to convince the examiner"

*Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017)

# Hierarchy of Claim Scope Surrender During Prosecution

## Actions …

**Rejections**

**Amendment**

**Cancellation**

**Acquiesence**

## Speak Louder Than Words …

**Argument**

# Claim Construction – Undisputed Issues

**UNDISPUTED:**

- **USPTO repeatedly REJECTED broader claims as unpatentable over prior art (by PTO Examiner and Board)**
- **Patent claims were NARROWED**
  - **How? … by CANCELLATION of broader claims**
  - **Why? … to OBTAIN ALLOWANCE in face of rejection(s)**
- **Intentional decision to ACQUIESCE to rejection(s)**
- **Continued acquiescence in 11 more patents**

# Hierarchy of Claim Scope Surrender During Prosecution

**Actions …**

**Rejections**

**Amendment**

**Cancellation**

**Acquiesence**

**… have *Consequences* …**

**Legal effect is SURRENDER of claim scope**

# Claim Scope Surrendered By Cancellation Cannot be Restored

"It is well established by Supreme Court cases that **disclaimer** can be determined from the applicant's **amendment** or **cancellation** of claims—**not just from statements** made by the applicant." *See Schriber-Schroth Co. v. Cleveland Tr. Co.*, 311 U.S. 211, 218 (1940) [and other Supreme Court authorities]

*Nite Glow Indus. v. Cent. Garden & Pet Co.*, 2021 U.S. App. LEXIS 20791, at *31 (Fed. Cir. 2021)

"Where the patentee in the course of his application in the patent office has, by amendment, **canceled or surrendered** claims, those which are allowed are to be read in light of those abandoned and an **abandoned claim cannot be revived and restored** to the patent by reading it **by construction into the claims which are allowed**."

*Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 217–18 (1940)

# Supreme Court on Disclaimer By Cancellation/Acquiescence

"Having **originally sought broader** claims, which were rejected, and having **acquiesced in such rejection**, and having **withdrawn** such claims, and substituted therefor this **narrower claim**, describing a particular or specific lock, as such, neither the patentee nor his assignees can be **allowed**, under the authorities, to insist upon such **construction of the allowed claim as would cover what had been previously rejected**."

*Corbin Cabinet Lock Co. v. Eagle Lock Co.*, 150 U.S. 38, 40 (1893)

"Here, the patentee **obtained his patent only by accepting the limitations** imposed by the Examiner. The claims were carefully drafted to reflect these limitations and [the patentee] is **not now free to assert a broader view of [the] invention**."

*Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 33 (1966)

# Plaintiffs' Prior Art Arguments Do Not Limit the Disclaimer

""[T]here is **no principle of patent law** that the **scope of a surrender** of subject matter during prosecution is **limited** to what is absolutely necessary to avoid a prior art reference that was the basis for an examiner's rejection. To the contrary, it **frequently** happens that patentees **surrender more through amendment than** may have been **absolutely necessary** to avoid particular prior art. In such cases, we have held the patentees to the scope of what they ultimately claim, and we have **not allowed** them to assert that claims should be **interpreted as if they had surrendered only what they had to**."

*Norian v. Stryker*, 432 F.3d 1356, 1361-62 (Fed. Cir. 2005)

# The TOTALITY of the Prosecution History Is Relevant

Prosecution history **disclaimer is determined based on the entire prosecution history**. Courts must view the prosecution history "as an official record that is created in the knowledge that its audience is not only the patent examining officials and the applicant, but the **interested public**."

*Seachange Int'l, Inc. v. C-Cor Inc.*, 413 F.3d 1361, 1372 (Fed. Cir. 2005)

"**Competitors** and the **public must be able to rely** on a patentees' clear and unmistakable **relinquishment of subject matter**."

*Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1321 (Fed. Cir. 2013)

# CHRONOLOGY of Prosecution History Disclaimer

**3/16/05**
**PATENTEE**
(16) Initial claims filed:
- 100 ppm to 250 ppm
- 150 ppm to 200 ppm
- 200 ppm

**6/20/06**
**PTO Examiner**
**REJECTS** ALL Claims

**8/25/06**
**PATENTEE**
(16) Claims **AMENDED**:
- About 125 ppm to about 250 ppm
- About 150 ppm to about 200 ppm
- About 200

**11/13/06**
**PTO Examiner**
**FINAL REJECTION** of ALL claims
(Helberg, Lyons, Canadian patent)

**2/20/08**
**PATENTEE**
**APPEAL** to PTAB filed

**5/10/10**
**PTAB Decision**
**AFFIRMS REJECTION** of Claims 1-3, 5-9, 12-16 and finds ***only*** Claims 4, 6, 11 ("about 200"/"200") patentable

**6/16/10**
**PATENTEE**
Responds to PTAB Decision by **refiling**:
- About 125 ppm to about 250 ppm
- About 150 ppm to about 200 ppm
- About 200 ppm

**7/7/10**
**PTO Examiner**
**REJECTS** claims to broader ranges (125/150) allows only "about 200"

**8/18/10**
**PATENTEE**
**CANCELS** claims to "about 125/150 ppm"

**PATENTEE**
OBTAINS
**11 more patents** all w/ "about 200" limitation

# Patentee Initially Sought Claims to Broad Ranges and Narrower Amounts

- **Broadest BAK Range:** "100 ppm to 250 ppm"
- **Narrower Range:** "150 ppm to 200 ppm"
- **Narrowest:** "200 ppm"

What is claimed is:

1. A composition comprising from 0.005% to 0.02% bimatoprost by weight and from 100 ppm to 250 ppm benzalkonium chloride, wherein said composition is an aqueous liquid which is formulated for ophthalmic administration.

2. The composition of claim 1 which further comprises an effective amount of EDTA.

3. The composition of claim 2 wherein the concentration of benzalkonium chloride is from 150 ppm to 200 ppm.

4. The composition of claim 3 having a pH of 7.4 which consists essentially of 0.015% bimatoprost, 200 ppm benzalkonium chloride, from 0 to 0.03% EDTA, a phosphate buffer, NaCl, and water.

5. The composition of claim 1 wherein the concentration of bimatoprost is from 0.01% to 0.02%.

6. The composition of claim 5 wherein the concentration of bimatoprost is from 0.015% to 0.02%.

7. The composition of claim 6 wherein the concentration of benzalkonium chloride is from 150 ppm to 200 ppm.

8. The composition of claim 7 wherein the concentration of benzalkonium chloride is 200 ppm.

ECF No. 90, Ex. 1 (3/16/06 Claims)

# USPTO Rejects ALL Claims as Unpatentable Over Prior Art

| Office Action Summary | Application No. 11/083,261 | Applicant(s) CHANG ET AL. |
|---|---|---|
| | Examiner Zohreh A. Fay | Art Unit 1618 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☐ Responsive to communication(s) filed on ____.

2a)☐ This action is **FINAL**. 2b)☒ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) 1-16 is/are pending in the application.

4a) Of the above claim(s) ____ is/are withdrawn from consideration.

5)☐ Claim(s) ____ is/are allowed.

6)☒ Claim(s) 1-16 is/are rejected.

7)☐ Claim(s) ____ is/are objected to.

8)☐ Claim(s) ____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on ____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

a)☐ All b)☐ Some * c)☐ None of:

1.☐ Certified copies of the priority documents have been received.

2.☐ Certified copies of the priority documents have been received in Application No. ____.

3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☐ Notice of References Cited (PTO-892)

2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3) ☒ Information Disclosure Statement(s) (PTO-1449 or PTO/SB/08) Paper No(s)/Mail Date ____.

4) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. ____.

5) ☐ Notice of Informal Patent Application (PTO-152)

6) ☐ Other: ____.

ECF No. 90, Ex. 2 (6/20/06 Office Action)

## Disposition of Claims

4)☒ Claim(s) *1-16* is/are pending in the application.

4a) Of the above claim(s) ____ is/are withdrawn from consideration.

5)☐ Claim(s) ____ is/are allowed.

6)☒ Claim(s) *1-16* is/are rejected.

7)☐ Claim(s) ____ is/are objected to.

8)☐ Claim(s) ____ are subject to restriction and/or election requirement.

Claims 1-16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Helberg et al. (U.S. Patent 6,646,001).

**REJECTED – 1st time**

# Plaintiffs Amend the Claimed BAK Ranges

LISTING OF THE CLAIMS

1. (Currently Amended) A composition comprising from 0.005% to 0.02% bimatoprost by weight and from ~~100 ppm~~ about 125 ppm to about 250 ppm benzalkonium chloride, wherein said composition is an aqueous liquid which is formulated for ophthalmic administration.

2. (Original) The composition of claim 1 which further comprises an effective amount of EDTA.

3. (Currently amended) The composition of claim 2 wherein the concentration of benzalkonium chloride is from about 150 ppm to about 200 ppm.

4. (Currently amended) The composition of claim 3 having a pH of about 7.4 which consists essentially of about 0.015% bimatoprost, about 200 ppm benzalkonium chloride, from about 0 to about 0.03% EDTA, a phosphate buffer, NaCl, and water.

5. (Currently amended) The composition of claim 1 wherein the concentration of bimatoprost is from about 0.01% to about 0.02%.

6. (Currently amended) The composition of claim 5 wherein the concentration of bimatoprost is from about 0.015% to about 0.02%.

7. (Currently amended) The composition of claim 6 wherein the concentration of benzalkonium chloride is from about 150 ppm to about 200 ppm.

8. (Currently amended) The composition of claim 7 wherein the concentration of benzalkonium chloride is about 200 ppm.

ECF No. 90, Ex. 3 (8/25/06 Response)

**Add "about" to all claimed ranges**

# USPTO Rejects ALL Claims Again

| *Office Action Summary* | Application No. 11/083,261 | Applicant(s) CHANG ET AL. | |
|---|---|---|---|
| | Examiner Zohreh A. Fay | Art Unit 1618 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☐ Responsive to communication(s) filed on *25 August 2006*.

2a)☒ This action is **FINAL**. 2b)☐ This action is non-final.

3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) *1-16* is/are pending in the application.

4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) *1-16* is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.

10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.

Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

a)☐ All b)☐ Some * c)☐ None of:

1.☐ Certified copies of the priority documents have been received.

2.☐ Certified copies of the priority documents have been received in Application No. _____.

3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

3)☒ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____

4)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____

5)☐ Notice of Informal Patent Application

6)☐ Other: _____

ECF No. 90, Ex. 4 (11/13/06 Office Action)

2a)☒ This action is **FINAL**.

**Disposition of Claims**

4)☒ Claim(s) *1-16* is/are pending in the application.

4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5)☐ Claim(s) _____ is/are allowed.

6)☒ Claim(s) *1-16* is/are rejected.

7)☐ Claim(s) _____ is/are objected to.

8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

Claims 1-16 are rejected under 35 U.S.C. 103 (a) as being unpatentable over Helberg et al. (6,646,001) and further over Lyons et al. (U.S. Patent 6,933,289) and Canadian patent Application 2498233 for the reasons set forth on pages 2 and 3 of the office action of June 20, 2006 and the following reasons. Lyons et al. teach the use of

**REJECTED – 2nd time**

# Board Affirms Rejection of Broader 125 and 150 Claims

UNITED STATES PATENT AND TRADEMARK OFFICE [redacted]

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

*Ex parte* CHIN-MING CHANG,
JAMES N. CHANG, RHETT M. SCHIFFMAN,
R. SCOTT JORDAN, and JOAN-EN CHANG-LIN

Appeal 2009-008452
Application 11/083,261
Technology Center 1600

Decided: May 10, 2010

Before LORA M. GREEN, MELANIE L. McCOLLUM, and JEFFREY N. FREDMAN, *Administrative Patent Judges*.

McCOLLUM, *Administrative Patent Judge*.

DECISION ON APPEAL

This is an appeal under 35 U.S.C. § 134 involving claims to a composition for ophthalmic administration. The Examiner has rejected the claims as obvious. We have jurisdiction under 35 U.S.C. § 6(b). We affirm-in-part.

ECF No. 90, Ex. 6 (5/10/10 Board Decision)

CONCLUSION

The evidence supports the Examiner's conclusion that a composition comprising from 0.005% to 0.02% by weight bimatoprost and about 125 ppm to about 250 ppm benzalkonium chloride would have been obvious. We therefore affirm the obviousness rejection of claim 1. Claims 2, 3, 5-9, and 12-16 have not been argued separately and therefore fall with claim 1. 37 C.F.R. § 41.37(c)(1)(vii).

However, the evidence does not support the Examiner's conclusion that a composition comprising about 0.015% bimatoprost and about 200 ppm benzalkonium chloride would have been obvious. We therefore reverse the obviousness rejection of claims 4, 10 and 11.

**REJECTED – 3rd time**

# Board Found WAIVER of Any Argument of Patentability for About 150 Claims

CONCLUSION

The evidence supports the Examiner's conclusion that a composition comprising from 0.005% to 0.02% by weight bimatoprost and about 125 ppm to about 250 ppm benzalkonium chloride would have been obvious. We therefore affirm the obviousness rejection of claim 1. Claims 2, 3, 5-9, and 12-16 have not been argued separately and therefore fall with claim 1. 37 C.F.R. § 41.37(c)(1)(vii).

National Archives and Records Administration

code of federal regulations

(vii) Argument. The contentions of appellant with respect to each ground of rejection presented for review in paragraph (c)(1)(vi) of this section, and the basis therefor, with citations of the statutes, regulations, authorities, and parts of the record relied on. Any arguments or authorities not included in the brief or a reply brief filed pursuant to § 41.41 will be refused consideration by the Board, unless good cause is shown. Each ground of rejection must be treated under a separate heading. For each ground of rejection applying to two or more claims, the claims may be argued separately or as a group. When multiple claims subject to the same ground of rejection are argued as a group by appellant, the Board may select a single claim from the group of claims that are argued together to decide the appeal with respect to the group of claims as to the ground of rejection on the basis of the selected claim alone. Notwithstanding any other provision of this paragraph, the failure of appellant to separately argue claims which appellant has grouped together shall constitute **a waiver of any argument** that the Board must consider the patentability of any grouped claim separately. Any claim argued separately should be placed under a subheading identifying the claim by number. Claims argued as a group should be placed under a subheading identifying the claims by number. A statement which merely points out what a claim recites will not be considered an argument for separate patentability of the claim.

**"… waiver of any argument [of] patentability …"**

# Despite Board Decision Plaintiffs Tried AGAIN to Get Broader Ranges of BAK

1. (currently amended) A composition comprising from ~~0.005% to 0.02%~~ about 0.01 – 0.015% bimatoprost by weight and from about 125 ppm to about ~~250~~ 200 ppm benzalkonium chloride, wherein said composition is an aqueous liquid which is formulated for ophthalmic administration.

~~2.~~ (currently amended) The composition of claim 1 which further comprises an effective amount of ~~EDTA.~~ dibasic sodium phosphate.

3. (previously presented) The composition of claim 2 wherein the concentration of benzalkonium chloride is from about 150 ppm to about 200 ppm.

4. (currently amended) The composition of claim ~~3~~ 1 having a pH of about ~~7.4~~ 7.3 which consists essentially of about 0.01~~5~~% bimatoprost, about 200 ppm benzalkonium chloride, ~~from about 0 to about 0.03% EDTA~~, a phosphate buffer, NaCl, and water.

ECF No. 90, Ex. 7 (6/16/10 Claim Amendment)

"about 125 ppm to about 200 ppm"

"about 150 ppm to about 200 ppm"

"about 200 ppm"

# PTO Examiner AGAIN Rejects Broader Claim Ranges

| *Office Action Summary* | Application No. 11/083,261 | Applicant(s) CHANG ET AL. | |
|---|---|---|---|
| | Examiner ZOHREH A. FAY | Art Unit 1612 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTH(S) OR THIRTY (30) DAYS, WHICHEVER IS LONGER, FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on *16 June 2010*.
2a)☐ This action is **FINAL**. 2b)☒ This action is non-final.
3)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4)☒ Claim(s) *1-20* is/are pending in the application.
4a) Of the above claim(s) *17-20* is/are withdrawn from consideration.
5)☒ Claim(s) *4,10 and 11* is/are allowed.
6)☒ Claim(s) *1-3, 5-9, 12-16* is/are rejected.
7)☐ Claim(s) _____ is/are objected to.
8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9)☐ The specification is objected to by the Examiner.
10)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.
Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).
11)☐ The oath or declaration is objected to by the Examiner. Note the attached Office Action or form PTO-152.

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
a)☐ All b)☐ Some * c)☐ None of:
1.☐ Certified copies of the priority documents have been received.
2.☐ Certified copies of the priority documents have been received in Application No. _____.
3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)
2)☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3)☐ Information Disclosure Statement(s) (PTO/SB/08) Paper No(s)/Mail Date _____.
4)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.
5)☐ Notice of Informal Patent Application
6)☐ Other: _____.

U.S. Patent and Trademark Office
PTOL-326 (Rev. 08-06) **Office Action Summary** Part of Paper No./Mail Date 20100702

ECF No. 90, Ex. 8 (7/7/10 Office Action)

**Disposition of Claims**

4)☒ Claim(s) *1-20* is/are pending in the application.
4a) Of the above claim(s) *17-20* is/are withdrawn from consideration.
5)☒ Claim(s) *4,10 and 11* is/are allowed.
6)☒ Claim(s) *1-3, 5-9, 12-16* is/are rejected.
7)☐ Claim(s) _____ is/are objected to.
8)☐ Claim(s) _____ are subject to restriction and/or election requirement.

Claims 1-3, 5-9 and 12-16 are rejected under 35 U.S.C. 103(a) as being unpatentable over Helberg et al. (U.S. Patent 6,646,001) in view of Lyons et al. (U.S. Patent 6,933289) and Canadian Patent 2498233.

**REJECTED – 4th time**

# Plaintiffs Acquiesce and Cancel Claims Except to "about 200 ppm"

1. (cancelled).
2. (cancelled).
3. (cancelled).
4. (currently amended) ~~The~~ A composition ~~of claim 1~~ having a pH of about 7.3 which consists essentially of about 0.01% bimatoprost, about 200 ppm benzalkonium chloride, a phosphate buffer, NaCl, and water, wherein said composition is an aqueous liquid which is formulated for ophthalmic administration.
5. (cancelled).
6. (cancelled).
7. (cancelled).
8. (cancelled).
9. (cancelled).
10. (currently amended) ~~The~~ A composition ~~of claim 1~~ having a pH of about 7.3 which comprises about 0.01% bimatoprost, about 200 ppm benzalkonium chloride, citric acid monohydrate, a phosphate buffer, and NaCl wherein said composition is an aqueous liquid which is formulated for ophthalmic administration.
11. (currently amended) ~~The~~ A composition ~~of claim 1~~ having a pH of about 7.3 which comprises about 0.01% bimatoprost, 200 ppm benzalkonium chloride, about 0.014 citric acid monohydrate,_ a phosphate buffer, NaCl, and water wherein said composition is an aqueous liquid which is formulated for ophthalmic administration.
12. (cancelled).
13. (cancelled).
14. (cancelled).
15. (cancelled).
16. (cancelled).
17. (cancelled).
18. (cancelled).
19. (cancelled).
20. (cancelled).

ECF No. 90, Ex. 9 (8/18/10 Response)

# No Dispute – Broader Claims Canceled to Obtain Allowance

| Post-Appeal Refiled Claims | Canceled/Amended Claims for Allowance |
|---|---|

**Post-Appeal Refiled Claims**

What is claimed is:

1. (currently amended) A composition comprising from ~~0.005% to 0.02%~~ about 0.01 – 0.015% bimatoprost by weight and from about 125 ppm to about ~~250~~ 200 ppm benzalkonium chloride, wherein said composition is an aqueous liquid which is formulated for ophthalmic administration.

~~2.~~ (currently amended) The composition of claim 1 which further comprises an effective amount of ~~EDTA.~~ dibasic sodium phosphate.

3. (previously presented) The composition of claim 2 wherein the concentration of benzalkonium chloride is from about 150 ppm to about 200 ppm.

4. (currently amended) The composition of claim ~~3~~ 1 having a pH of about ~~7.4~~ 7.3 which consists essentially of about 0.01~~5~~% bimatoprost, about 200 ppm benzalkonium chloride, ~~from about 0 to about 0.03% EDTA~~, a phosphate buffer, NaCl, and water.

ECF No. 90, Ex. 7 (6/16/10 Claim Amendment)

**Canceled/Amended Claims for Allowance**

What is claimed is:

1. (cancelled).

2. (cancelled).

3. (cancelled).

4. (currently amended) ~~The~~ A composition ~~of claim 1~~ having a pH of about 7.3 which consists essentially of about 0.01% bimatoprost, about 200 ppm benzalkonium chloride, a phosphate buffer, NaCl, and water, wherein said composition is an aqueous liquid which is formulated for ophthalmic administration.

ECF No. 90, Ex. 9 (8/18/10 Response)

**Canceled … Amended … Acquiesced … Surrendered**

# The TOTALITY of the Prosecution History is Relevant

Prosecution history **disclaimer is determined based on the <u>entire</u> prosecution history**. Courts must view the prosecution history "as an official record that is created in the knowledge that its audience is not only the patent examining officials and the applicant, but the **interested public**."

*Seachange Int'l, Inc. v. C-Cor Inc.*, 413 F.3d 1361, 1372 (Fed. Cir. 2005)

"**Competitors** and the **public <u>must</u> be able to rely** on a patentees' clear and unmistakable **relinquishment of subject matter**."

*Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1321 (Fed. Cir. 2013)

# Claim Scope Surrendered By Cancellation Cannot be Restored

"It is well established by Supreme Court cases that **disclaimer** can be determined from the applicant's **amendment** or **cancellation** of claims—**not just from statements** made by the applicant." *See Schriber-Schroth Co. v. Cleveland Tr. Co.*, 311 U.S. 211, 218 (1940) [and other Supreme Court authorities]

*Nite Glow Indus. v. Cent. Garden & Pet Co.*, 2021 U.S. App. LEXIS 20791, at *31 (Fed. Cir. 2021)

"Where the patentee in the course of his application in the patent office has, by amendment, **canceled or surrendered** claims, **those which are allowed are to be read in light of those abandoned** and an **abandoned claim cannot be revived and restored** to the patent by reading it **by construction into the claims which are allowed**."

*Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 217–18 (1940)

# Supreme Court on Disclaimer By Cancellation/Acquiescence

"Having **originally sought broader** claims, which were rejected, and having **acquiesced in such rejection**, and having **withdrawn** such claims, and substituted therefor this narrower claim, describing a particular or specific lock, as such, neither the patentee nor his assignees can be **allowed**, under the authorities, to insist upon such **construction of the allowed claim as would cover what had been previously rejected**."

*Corbin Cabinet Lock Co. v. Eagle Lock Co.*, 150 U.S. 38, 40 (1893)

"Here, the patentee **obtained his patent only by accepting the limitations** imposed by the Examiner. The claims were carefully drafted to reflect these limitations and [the patentee] is **not now free to assert a broader view of [the] invention**."

*Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 33 (1966)

# Claim Construction – Plaintiffs' Ongoing Acquiescence Is Relevant

- For more than a **decade** following … multiple rejections, appeal, Board decision, and cancellation/amendment/acquiescence …
- Patentee refiled series of "continuation" applications for **eleven (11) more patents**
- Made **intentional decision** over and over **to continued acquiescence** and pursuit of only claims limited to "about 200 ppm"

"SandBox's **failure to challenge** the Examiner's understanding amounts to a **disclaimer**"

*SandBox Logistics LLC v. Proppant Express Investments LLC*, 813 F. App'x. 548, 553 (Fed. Cir. 2020)

# Disclaimer by Acquiescence and Failure to Challenge

"[Patentee] **cannot acquiesce to a rejection** and to an agreed alternative, and **now years later** shift his stance 180° to **argue for a second bite at the abandoned** apple."

*Lemelson v. General Mills, Inc.*, 968 F.2d 1202, 1207-08 (Fed. Cir. 1992)

"If an applicant chooses, she can **challenge** an examiner's characterization in order **to avoid any chance for disclaimer**, but the applicants in this case did not directly challenge the examiner's characterization."

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1096 (Fed. Cir. 2013)

# Competitors MUST be Able to Rely on Disclaimers

**Competitors <u>MUST</u> be able to rely on these ACTIONS …**

*PTO Rejection(s) → Appeal → Board Rejection → Examiner Rejection*

*Claim Cancellation, Amendment, and Acquiescence*

"**Competitors** and the **public <u>must</u> be able to rely** on a patentees' clear and unmistakable **relinquishment of subject matter**."

*Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1321 (Fed. Cir. 2013)

# Impact of Plaintiffs' Claim Scope Disclaimer

| Amneal's Construction |
| --- |
| *"approximately 200 ppm* ***but not including "about 150 ppm to" of BAK*** *that was disclaimed during prosecution of the '504 patent."* |

***… no matter how you slice it …***

[redacted]

# Plaintiffs Have No Plausible Basis to Prove Infringement

**Plaintiffs' Argument =** **"about" permits expansion of "literal" scope of endpoint by as much as 25% (or 50 ppm)**




- **Ignores PTO Examiner** - **"about" only denotes *"slight differences"***
- **Ignores the LAW holding that "about" must be construed consistently**
- **Ignores the claim term "to"**
- **Ignores the DISCLAIMER of the broader claimed range "*about 150 ppm to* about 200 ppm" and its literal claim scope SURRENDER**

# Terms in Patent Must Be Interpreted Consistently

A claim term "cannot be interpreted differently in different claims because claim terms **must be interpreted consistently**."

*Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995).

"[A] claim term should be **construed consistently** with its appearance in other places in the same claim or in other claims of the same patent."

*Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336 (2001).

"A word or phrase used consistently throughout a claim should be **interpreted consistently**."

*Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1465 (Fed. Cir. 1998).

# "About" Must Be Construed Consistently Under the Law

| Disclaimed | Claimed |
| --- | --- |
| "***about*** 150 ppm ***to***" | "***about*** 200 ppm" |

- **Giving the word "to" meaning in the claimed range then "about 200 ppm" cannot encompass** [redacted]

# The Claimed Word "to" Must be Given Meaning and Effect

"It is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous."

*Wasica Finance GmbH v. Continental Automotive Sys., Inc.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017).

# Plaintiffs Have No Plausible Basis to Prove Infringement

"about 150 ppm to about 200 ppm"




***… EITHER "literal" scope of claims do not extend to Amneal's product …***

# Plaintiffs Have No Plausible Basis to Prove Infringement



# Plaintiffs Have No Plausible Basis to Prove Infringement




***… any number above 10% would be deeper within the disclaimed subject matter of "about 150 ppm to" …***

# Plaintiffs Have No Plausible Basis to Prove Infringement

**... pick a number ... any number ...**




***... no infringement ... as a matter of math, logic, and LAW ...***

# Plaintiffs Have No Plausible Basis to Prove Infringement




***… OR no infringement***

***even under Plaintiffs' argument …***

# Plaintiffs Have No Plausible Basis to Prove Infringement



# Plaintiffs Have No Plausible Basis to Prove Infringement




***… the "literal" claim scope***

***even under Plaintiffs' argument …***

# Plaintiffs' Disclaimer is Not Limited to What was "Absolutely Necessary"

""[T]here is **no principle of patent law** that the **scope of a surrender** of subject matter during prosecution is **limited** to what is absolutely necessary to avoid a prior art reference that was the basis for an examiner's rejection. To the contrary, it **frequently** happens that patentees **surrender <u>more</u> through amendment than** may have been **absolutely necessary** to avoid particular prior art. In such cases, we have held the patentees to the scope of what they ultimately claim, and we have **not allowed** them to assert that claims should be **interpreted as if they had surrendered only what they had to**."

*Norian v. Stryker*, 432 F.3d 1356, 1361-62 (Fed. Cir. 2005)

# Canceled Claim Scope Cannot be Restored to Narrower Allowed Claims

"Having **originally sought broader** claims, which were rejected, and having **acquiesced in such rejection**, and having **withdrawn** such claims, and substituted therefor this **narrower claim**, describing a particular or specific lock, as such, neither the patentee nor his assignees can be **allowed**, under the authorities, to insist upon such **construction of the allowed claim as would cover what had been previously rejected**."

*Corbin Cabinet Lock Co. v. Eagle Lock Co.*, 150 U.S. 38, 40 (1893)

"Where the patentee in the course of his application in the patent office has, by amendment, **canceled or surrendered** claims, those which are allowed are to be read in light of those abandoned and an **abandoned claim cannot be revived and restored** to the patent by reading it **by construction into the claims which are allowed**."

*Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 217–18 (1940)

# Plaintiffs Have No Plausible Basis to Prove Infringement in View of Disclaimer

| Amneal's Construction |
| --- |
| *"approximately 200 ppm* ***but not including "about 150 ppm to" of BAK*** *that was disclaimed during prosecution of the '504 patent."* |

***NO plausible way to prove infringement as a Matter of Law***