UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Allergan, Inc. and AbbVie Inc.,<br><br>Plaintiffs,<br><br>-v-<br><br>Amneal Pharmaceuticals of New York, LLC, Amneal EU, Limited, and Amneal Pharmaceuticals Private Limited,<br><br>Defendants. | 2:23-cv-6208<br>(NJC) (ST)<br><br>SEALED |

## MEMORANDUM AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiffs AbbVie Inc. and Allergan, Inc. (together, "AbbVie") bring this patent suit against Amneal Pharmaceuticals of New York, LLC and Amneal EU, Limited (together, "Amneal"). (Compl., ECF No. 1.) AbbVie is the patentholder of Patent No. 7,851,504 (the "'504 Patent") for LUMIGAN® 0.01% ("Lumigan"), a drug that treats open angle glaucoma and ocular hypertension. (Compl. ¶¶ 3–4, 12–13.) AbbVie alleges that Amneal infringed the '504 Patent by developing and seeking approval from the Food and Drug Administration ("FDA") for a generic version of the drug. (Compl. ¶¶ 51–58.) Amneal brings counterclaims against AbbVie, seeking judgments declaring (1) that the '504 Patent is invalid, (2) that the '504 Patent's 819-day patent term adjustment ("PTA") from March 16, 2025 to June 13, 2027 is unlawful, and (3) that Amneal's generic product does not infringe the '504 Patent. (Answer & Countercls. at 57–61, ECF No. 26-1.)

On June 30, 2025, I issued an Opinion and Order denying Amneal's Motion for Judgment on the Pleadings ("Order"). (MJOP Mot., ECF No. 95; MJOP Mem., ECF No. 95-1; MJOP

Opp'n, ECF No. 95-19; MJOP Reply, ECF No. 95-25; MJOP Order, ECF No. 111.)[1] Before me now is Amneal's Motion for Reconsideration under Local Rule 6.3 and Rule 54(b) of the Federal Rules of Civil Procedure ("Motion"), in which Amneal seeks reconsideration of the Order's denial of judgment on the pleadings on the issue of whether the PTA applied to the '504 Patent is unlawful. (Mot. Reconsid., ECF No. 114.)

For the reasons explained below, I deny Amneal's Motion.

## BACKGROUND

The Order is incorporated by reference, and I presume familiarity with it. *See*, *e.g.*, *Williams v. Nat'l R.R. Passenger Corp. (Amtrak)*, No. 18-cv-7070, 2019 WL 3423267, at *1 (S.D.N.Y. July 30, 2019) (incorporating by reference prior recitations of procedural history and facts).[2] Consequently, I recite only those facts necessary to resolve the Motion for Reconsideration.

### I.      AMNEAL'S MOTION FOR JUDGMENT ON THE PLEADINGS

Amneal moved for judgment on the pleadings on two issues. First, Amneal asked me to rule as a matter of law that its generic product does not infringe the '504 Patent, either literally or under the doctrine of equivalents. (MJOP Mem. at 9–13.) Second, Amneal asked me to rule—again, as a matter of law on the pleadings alone—that the '504 Patent's 819-day PTA was unlawful and that therefore the '504 Patent expired on March 16, 2025 (the original expiration

---

[1] The full Order is under seal because it contains "detailed and highly technical information" that I determined could remain under seal due to the parties' confidentiality concerns. (Elec. Order, June 30, 2025.) An unsealed version of the Order, which applies narrowly tailored redactions of the identified confidential information, is available on the docket at ECF No. 113.

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, brackets, and citations.

date), and is not set to expire on June 13, 2027 (the current expiration date under the PTA). (MJOP Mem. at 14–20.)

## II. THE COURT'S ORDER

In the Order, I denied the Motion for Judgment on the Pleadings in its entirety. (*See* Order.) With respect to Amneal's first argument, I held that the issue of infringement—which relies on a determination of whether the amount of benzalkonium chloride contained in Amneal's generic drug is "encompassed by the term 'about 200 ppm benzalkonium chloride'" as claimed in the '504 Patent—"is a fact-specific question that will likely require reliance on expert witness testimony and other evidence to resolve." (Order at 14.) With respect to Amneal's second argument, I held that disputed factual issues likewise precluded judgment on the pleadings as to whether the '504 Patent's 819-day PTA was unlawful. (*Id.* at 19–23.)

In reaching my decision to deny judgment on the pleadings as to the PTA issue, I relied on the Federal Circuit's decision in *SawStop Holding LLC v. Vidal*, 48 F.4th 1355 (Fed. Cir. 2022).[3] There, the Federal Circuit analyzed 35 U.S.C. § 154(b)(1)(C) (the so-called "C Delay" provision)[4] in the context of an action brought under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), challenging decisions by the Patent & Trademark Office ("PTO") to deny the application of C Delay PTA to two patents held by the plaintiff (the "'476 Patent" and the "'796 Patent"). *SawStop*, 48 F.4th at 1357. The Federal Circuit upheld the PTA denials with

---

[3] In the Order, I provide a more thorough summary of the Federal Circuit's decision in the *SawStop* case, including the factual and procedural background. (Order at 14–19.)

[4] As discussed in more detail in the Order, the C Delay provision provides that a patent's term "shall be extended 1 day for each day of the pendency of the proceeding, order, or review" where "the issue of an original patent is delayed due to . . . appellate review by the Patent Trial and Appeals Board or by a Federal court in a case in which the patent was issued under a decision in the review reversing an adverse determination of patentability." 35 U.S.C. § 154(b)(1)(C).

3

respect to both patents for two reasons. First, it held that the PTO Appeals Board's decisions with respect to both patents did not "revers[e] an adverse determination of patentability" because, although SawStop ultimately received patents for certain claims that it submitted, the specific claims reviewed on appeal to the PTO Appeals Board remained unpatentable both before and after their respective appeals. *SawStop*, 48 F.4th at 1360–61. Second, it held that the patents that SawStop ultimately received were not "issued under a decision in the review" because the claims reviewed on appeal were subject to extensive subsequent prosecution and substantive amendments before they ultimately issued as patents. *SawStop*, 48 F.4th at 1361–62. On this point, the Federal Circuit specifically held: "The statutory requirement [that 'the patent was issued under a decision in the review'] is not met if the claim that ultimately issues *differs substantively* from the claim under review." *SawStop*, 48 F.4th at 1362 (emphasis added).

      Applying the binding precedent set forth in *SawStop*, I found that factual issues precluded judgment on the pleadings as to the whether, in this action, the claims that ultimately issued as the '504 Patent "differ[] substantively" from those reviewed by the PTO Appeals Board. (Order at 21–23.) I recognized that AbbVie made specific changes to its claims following the PTO Appeals Board decision and before those claims ultimately issued as the '504 Patent—specifically, AbbVie removed all reference to EDTA, changed the concentration of bimatoprost from "about 0.015%" to "about 0.01%", and altered the pH from 7.4 to 7.3. (*Id.* at 21–22.) Although, as I stated in the Order, Amneal "raises compelling arguments" that the amended claims "differ substantively" from the claims reviewed, I nevertheless held that I could not determine as a matter of law *on the pleadings alone*—without the aid of any documentary evidence or fact or expert witness testimony—that these changes amounted to *substantive differences* under the standard set forth in *SawStop*. (*Id.* at 22.) In reaching this conclusion, I

4

noted that "the Federal Circuit in *SawStop* did not provide guidance for applying the second prong of the C Delay test—requiring that the application reviewed on appeal issue as a patent as a result of the reversal of the adverse determination—nor has any district court." (*Id.*) Further, and although not dispositive of the issue, I noted the difference in the burdens of proof applied to resolve the appeal from a denial of the PTA in *SawStop* as opposed to the challenge to the validity of a patent based on the grant of a PTA in this case, in light of their different procedural postures. (*Id.* at 22–23.) As I explained, in *SawSto*p, the Federal Circuit reviewed the PTO's denial of PTA under the APA's "arbitrary and capricious" standard. (*Id.*) Here, by contrast, Amneal brings its unlawful PTA argument under 35 U.S.C. § 282(c) as an affirmative defense to a patent infringement claim, which requires a showing by "clear and convincing" evidence that the PTA was unlawful. (*Id.*) Accordingly, I denied Amneal judgment on the pleadings on the issue of whether the grant of an 819-day PTA for the '504 Patent was unlawful.

### III. AMNEAL'S MOTION FOR RECONSIDERATION

On July 14, 2025, Amneal filed its Motion for Reconsideration. (Mot. Recons.; Mem., ECF No. 115-1.) On July 28, 2025, AbbVie filed an 8.5-page memorandum in opposition, which exceeds the 5-page limit for motion for reconsideration briefing set forth in Rule 5.3.1 of my Individual Rules for Civil and Criminal Cases. (Opp'n, ECF No. 116-1.) On August 4, 2025, Amneal filed a reply memorandum, which is likewise not permitted as of right under my Individual Rules. Reply, ECF No. 117; *see* Judge Choudhury Individual Rule 5.3. Amneal's reply specifically highlights AbbVie's failure to comply with this Court's page limits and asserts that "the Court is well within its discretion to strike [AbbVie's] opposition and deem Amneal's motion for reconsideration unrebutted." (Reply at 2.) On August 5, 2025, AbbVie filed a letter stating that it "inadvertently overlooked" the page limit for motion for reconsideration briefing

set forth in my Individual Rules, noting that Amneal submitted a reply brief without leave, and requesting that I consider all briefing in resolving the Motion. (AbbVie Ltr., ECF No. 119.)

I have reviewed and considered all briefing submitted in connection with Amneal's Motion for Reconsideration. Amneal is correct that AbbVie's opposition brief exceeds my page limits, and AbbVie is correct that Amneal was required to seek leave to file a reply in support of its Motion for Reconsideration. Nevertheless, since Amneal *did* file a reply, I find that it was not prejudiced by the fact that AbbVie submitted an opposition brief that exceeded my page limits by 3.5 pages.[5] Accordingly, with the submission of Amneal's opening brief, AbbVie's opposition, and Amneal's reply, I deem the Motion for Reconsideration fully briefed.

## LEGAL STANDARD

The standard for granting a motion for reconsideration is "strict." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024). The decision to grant or deny a motion for reconsideration rests within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009). "A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013). In other words, "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court." *Commerzbank AG*, 100 F.4th at 337. A motion for

---

[5] Even if I were to strike (and, accordingly, decline to consider) both AbbVie's noncompliant opposition and Amneal's noncompliant reply, this would not change the outcome of my ruling since, as explained below, Amneal fails to meet the requirements for reconsideration of the Order denying its Motion for Judgment on the Pleadings.

reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). A party's "disagreement" with the court's "explication of the relevant legal standards and application of the standards to the facts of the case" does not justify the grant of a motion for reconsideration. *McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 398 (S.D.N.Y. 2018). The "manifest injustice" standard affords the district court substantial discretion and is rarely met. *See Chitkara v. N.Y. Tel. Co.*, 45 F. App'x 53, 55 (2d Cir. 2002).

## DISCUSSION

Amneal seeks reconsideration of only the portion of the Order that denied its request for judgment on the pleadings on the basis that the grant of the 819-day PTA to the '504 Patent was unlawful. In its opening brief, Amneal argues that the Order committed clear error in holding that *SawStop* "did not provide guidance for applying the second prong of the C Delay test" and that resolution of the PTA issue here requires a "fact-intensive inquiry" that will likely require review of the "full post-discovery record, including expert evidence." (Mem. at 2–4 (citing Order at 22–23).) Amneal asserts that Federal Circuit in *SawStop* conducted a "straightforward" "side-by-side" comparison of the claims reviewed on appeal against the claims ultimately issued as patents and simply determined that they were "not the same." (*Id.* at 3.) Amneal stresses that, in *SawStop*, neither the district court nor the Federal Circuit relied on expert testimony to resolve the PTA issue. (*Id.* at 3–4.) Amneal also argues that the Order committed clear error in holding that proving the affirmative defense of invalidity due to an unlawful PTA under 35 U.S.C. § 282(c) requires a showing by "clear and convincing evidence." (*Id.* at 5.) According to Amneal, this is an "evidentiary standard that is neither required by 35

7

U.S.C. § 282(c) nor any of the cases cited in the Order." (*Id.*) Finally, Amneal argues that reconsideration is especially important here because "correcting such clear error is important for competitors and litigants, the public, patent prosecutors, and courts who will be confronting PTA issues in the future" and because of the public interest in providing glaucoma patients with access to "more affordable bimatoprost medications." (*Id.*)

In opposition, AbbVie notes that Amneal's Motion for Reconsideration with respect to the PTA analysis does not show "clear error" on the part of the Court, but rather "boils down to a disagreement" over how the "differs substantively" standard set forth in *SawStop* applies to the grant of the PTA for the '504 Patent, which was already litigated and addressed in the Order. (Opp'n at 3.) AbbVie maintains that the Order correctly applied the *SawStop* "differs substantively" standard in this action because the question of whether the patent claim permitted by the PTO Appeals Board and the claim that ultimately issued as the '504 Patent is a fact-bound inquiry requiring review of an evidentiary record, likely including expert testimony. (*Id.* at 3–4.) AbbVie concedes that no expert testimony was offered in *SawStop*, but contends that this argument is "misplaced" because that case was brought against the PTO itself—which is "the expert in both claim scope and interpretation." (*Id.* at 4.) AbbVie provides additional analysis of the *SawStop* opinion, including the Federal Circuit's finding that claim 11 of the '476 Patent in that case issued "only after significant substantive post-appeal prosecution and amendment." (*Id.* at 5 (citing *SawStop*, 48 F.4th at 1359).) As to Amneal's argument that the "clear and convincing evidence" standard does not apply to its invalidity defense, AbbVie argues that, because Amneal did not raise this objection in its Motion for

8

Judgment on the Pleadings briefing, Amneal cannot raise it in the first instance now. (*Id.* at 6–7.) AbbVie also relies on *Microsoft Corporation v. i4i Limited Partnership*, 564 U.S. 91, 95 (2011), in which the Supreme Court held, "We consider whether § 282 requires an invalidity defense to be proved by clear and convincing evidence. We hold that it does." Finally, AbbVie argues that reconsideration is not necessary to prevent "manifest injustice." (Opp'n at 8–9.)

On reply, Amneal reiterates its position concerning the application of the *SawStop* "differs substantively" standard and disagrees with AbbVie's characterization of the *SawStop* decision. (Reply at 3–4.) Amneal asserts that the "clear and convincing evidence" standard set forth in *Microsoft* applies only to invalidity defenses under 35 U.S.C. § 282(b) and not to an invalidity defense under 35 U.S.C. § 282(c), which is the defense at issue in Amneal's challenge to the 819-day PTA on the '504 Patent. (*Id.*) However, Amneal fails to articulate any alternative standard or identify any authority demonstrating that such a standard would apply here.

For the reasons explained below, I deny reconsideration on all grounds.

## I.   THE COURT'S APPLICATION OF *SAWSTOP*

Amneal's arguments concerning the Order's application of the *SawStop* "differs substantively" standard to its request for judgment on the pleadings do not identify any "clear error" warranting reconsideration, but instead largely repeat arguments already considered by the Court. Indeed, in the Order, I already addressed Amneal's argument that AbbVie's amended claims "differ substantively" from the claims reviewed on appeal, and I held that I could not make such a ruling as a matter of law. (*See* Order at 19–23.)

Further, Amneal's argument that *SawStop* applied a "straightforward," "side-by-side" comparison to determine that the claims reviewed on appeal and those that ultimately issued as patents were "not the same" relies on an oversimplification of the Federal Circuit's analysis in that case. The *SawStop* opinion states multiple times that, in order to receive a C Delay PTA, the claims issued as patents cannot be *substantively* different from the claims reviewed on appeal—not that there can be *no differences at all*. *See SawStop*, 48 F.4th at 1362 (noting that the relevant claim that led ultimately to the issuance of the '476 Patent was "subject to a year of additional substantive prosecution and amendments"); *id.* at 1362 ("The statutory requirement is not met if the claim that ultimately issues differs substantively from the claim under review."); *id.* ("Because claim 11 . . . issued only after significant substantive post-appeal prosecution and amendment, we affirm the District Court's determination . . . ."). Amneal's argument boils down to the proposition that any textual difference between the claim considered by the PTO Appeals Board and the claim that is ultimately issued as a patent constitutes a "substantive difference" that will preclude the grant of a C Delay PTA. However, *SawStop* did not state such a rule. Without the benefit of an evidentiary record, analyzed in the context of the relevant art, I cannot determine whether the alteration of bimatoprost concentration by 0.005%, the removal of EDTA, or a change in pH of .1 are *substantive* changes with respect to the composition ultimately patented as Lumigan.

Central to my ruling in the Order is the fact that Amneal raised the issue of the invalidity of the 819-day PTA on the '504 Patent through a motion for judgment on the pleadings. On this point, I emphasize that, while Amneal is correct that it appears the parties in *SawStop* did not present expert evidence, the Federal Circuit's decision

10

reviewed the district court's grant of *summary judgment* (i.e., where the court considers the evidentiary record developed in discovery and the Court determines that there is no genuine dispute of material fact) not, as here, a *motion for judgment on the pleadings* (where the court must consider solely the non-moving party's pleadings). *SawStop*, 48 F.4th at 1357; Fed. R. Civ. P. 56(a) (providing that summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"); *Goldberg v. Pace Univ.*, 88 F.4th 204, 210 (2d Cir. 2023) ("To survive a motion for judgment on the pleadings, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). Moreover, based on the parties' submissions on the Motion for Judgment on the Pleadings, there are numerous factual disputes concerning the substantive nature (if any) of the post-review amendments to the claims that ultimately issued as the '504 Patent—specifically, whether the alteration of bimatoprost concentration by 0.005%, the removal of EDTA, and a change in pH of .1 (either alone or in combination) are *substantive* changes to the claim considered by the PTO Appeals Board.

Accordingly, Amneal has failed to identify any clear error warranting reconsideration of the Order's denial of judgment on the pleadings as to whether the '504 Patent's PTA was unlawful.

## II.  EVIDENTIARY STANDARD UNDER 35 U.S.C. § 282(c)

With respect to Amneal's argument that the Order committed clear error by holding that the "clear and convincing evidence" standard applies to its patent invalidity defense under 35 U.S.C. § 282(c), AbbVie is correct that it first asserted that this was the proper legal standard in its opposition to the Motion for Judgment on the Pleadings and that Amneal failed to raise any

11

objection to that argument in its reply brief. (*See generally* MJOP Opp'n, MJOP Reply.) Accordingly, Amneal untimely raises this objection in the first instance on a motion for reconsideration.

In any event, Amneal's briefing on the Motion for Reconsideration identifies no clear error in my prior ruling. Amneal's argument that the clear and convincing evidence standard only applies to invalidity defenses enumerated in 35 U.S.C. § 282(b), not under the PTA invalidity defense set forth in 35 U.S.C. § 282(c), is unconvincing. The Supreme Court in *Microsoft Corporation* expressly held:

> Under § 282 of the Patent Act of 1952, "[a] patent shall be presumed valid" and "[t]he burden of establishing in-validity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282. We consider whether § 282 requires an invalidity defense to be proved by clear and convincing evidence. We hold that it does.

*Microsoft Corp.*, 564 U.S. at 95. While *Microsoft Corporation* specifically addressed an invalidity defense under § 282(b), the Supreme Court did not limit its holding specifically to § 282(b). Amneal provides no reason why a different burden of proof would apply to an invalidity defense under § 282(c). Tellingly, it cites no authority to support its contention. Nor does Amneal propose an alternative burden of proof for a party seeking to show that a patent was not "issue[d] under a decision in the review reversing an adverse determination of patentability" under 35 U.S.C. § 154(b)(1)(C)(iii), beyond advocating for courts to conduct a general "side-by-side" comparison to identify any textual differences between the claim adjudicated by the PTO Appeals Board and the claim ultimately issued as a patent. (Reply at 4.)

Therefore, I deny reconsideration on the issue of the legal standard to apply to Amneal's patent invalidity defense under 25 U.S.C. § 282(c).

### III. MANIFEST INJUSTICE

Finally, Amneal's argument that reconsideration of the Order is necessary to prevent manifest injustice is unavailing. (*See* Mem. at 5.) Amneal cites "the '504 Patent's improperly extended monopoly" as a "direct, obvious, and observable impact" of the Order's purported "error" and argues that, "beyond resolving this case," granting reconsideration "would also provide glaucoma patients with access to more affordable bimatoprost medications." (*Id.*) Therefore, according to Amneal, "correcting such clear error is important for competitors and litigants, the public, patent prosecutors, and courts who will be confronting PTA issues in the future." (*Id.*)

Amneal's argument, however, collapses the "clear error" and "manifest injustice" analyses. Because I have previously found that the Order did not commit clear error at all, I also find that no manifest injustice has resulted from any such clear error. Moreover, while the '504 Patent's PTA has the potential to delay the availability of Amneal's generic bimatoprost drug for up to 819 days, this alone is not a manifest injustice. Congress enacted 35 U.S.C. § 154, which sets forth a statutory scheme pursuant to which patentholders are entitled to PTAs in specific situations. Congress also enacted 35 U.S.C. § 282(c), which provides defendants in patent litigation the ability to challenge the validity of an improperly granted PTA as an affirmative defense to an infringement action. Even assuming that I ultimately find on a fully developed factual record that the '504 Patent's PTA was unlawful, there is no manifest injustice from the mere fact that the PTA remains in force pending a trial on the merits to resolve Amneal's

13

assertion of an invalidity affirmative defense. Rather, this is the process required by the relevant patent laws enacted by Congress and the Federal Rules of Civil Procedure.

## CONCLUSION

For the reasons set forth above, the Court denies Amneal's Motion for Reconsideration (ECF No. 114).

Dated: Central Islip, New York
August 13, 2025

                                        */s/ Nusrat J. Choudhury*
                                        NUSRAT J. CHOUDHURY
                                        United States District Judge